Affirmed and Memorandum Opinion filed October 15,
2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00248-CV

____________

 

ANTHONY SHEPPARD, Appellant

 

V.

 

TRAVELERS LLOYDS OF TEXAS INSURANCE
COMPANY,
Appellee

 



 

On Appeal from the 125th
District Court

Harris County, Texas

Trial Court Cause No. 2006-74164

 



 

M E M O R A N D U M  O P I N I O N

Anthony Sheppard appeals from a summary
judgment in favor of Travelers Lloyds of Texas Insurance Company in connection
with Sheppard=s claims for breach of contract and violations of the
Texas Insurance Code.  We affirm.

Background

Sheppard contracted with Travelers to
insure a dwelling located at 306 West Cowan Drive pursuant to a Texas
homeowners HO-B policy.  The policy period began on October 6, 2000 and expired
on October 6, 2001.








Water entered 306 West Cowan when Tropical
Storm Allison brought heavy rains to Houston between June 5 and June 9, 2001. 
Sheppard submitted a claim for structure and contents damage to Travelers on
June 11, 2001.  The
parties dispute the degree to which water entry at 306 West Cowan during
Tropical Storm Allison was attributable to wind-driven rain or to surface
flooding.  The policy
covers physical loss to the dwelling caused by wind-driven rain; the policy
does not cover physical loss caused by flooding.

Independent adjuster Shawn York inspected
306 West Cowan on July 4, 2001 at Travelers=s request.  York
orally informed Sheppard at the inspection=s outset that
contents damage would not be covered.  Following the inspection, York told
Sheppard his estimated payment would be $4,890.60 after reductions due to
depreciation and Sheppard=s deductible.  York instructed Sheppard to
contact Travelers if he had any additional information to report that might
affect his claim.  On July 22, 2001, Travelers sent a $4,890.60 check to
Sheppard and closed its claim file.

Sheppard did not communicate with
Travelers during the next 20 months.  On May 9, 2003, Travelers received
correspondence from Sheppard=s attorney styled as a notice of loss and
letter of representation relating to Sheppard=s claim for damage
to 306 West Cowan.  Sheppard=s attorney sent another letter to
Travelers dated May 22, 2003, in which the attorney stated that 306 West Cowan Ahas severe water damage
and serious toxic mold infestation that was caused by a covered loss and
recently discovered.@  The letter continues, AFurther, our
investigation reveals that this type of damage is covered by Mr. Sheppard=s homeowners
policy and . . . occurred during the period of coverage.@  Travelers
responded in a June 23, 2003 letter to Sheppard=s attorney stating
that Travelers would investigate Sheppard=s claim Asubject to a
complete reservation of its rights@ under the policy.








Travelers sent Sheppard=s attorney another
letter dated May 25, 2004 that repeated Travelers=s full reservation
of rights under the policy.  Among other provisions, Travelers highlighted the
policy=s provision
regarding the time frame for filing suit.  This paragraph states as follows: ANo suit or action
can be brought unless the policy provisions have been complied with.  Action
brought against [Travelers] must be started within two years and one day after
the cause of action accrues.@  The May 25, 2004 letter stated that Amore than two
years and one day have passed since any potential cause of action may have
accrued . . . .@

After investigating Sheppard=s claim, Travelers
sent Sheppard=s attorney a letter dated March 8, 2005 denying
Sheppard=s claim. 
Travelers repeated its full reservation of rights from the 2003 and 2004
letters, and again quoted the policy=s paragraph
regarding the time limit for filing suit.  Travelers stated three reasons for
denying Sheppard=s claim under the policy: (1) its
determination that flooding from surface water, an excluded peril, caused the
damage in question; (2) Sheppard=s failure to
repair the premises within 365 days of the loss event; and (3) Sheppard=s failure to bring
an action within two years and one day from the date of the alleged
underpayment.

Travelers received no further
correspondence from Sheppard or his attorney until Sheppard filed suit against
Travelers on November 17, 2006.  Sheppard=s original
petition  alleged that Travelers (1) breached the policy by Afailing to fully
pay covered claims;@ and (2) violated the Insurance Code by
failing Ato fully and
promptly investigate, settle and pay the covered claims.@  See Tex.
Ins. Code Ann. '' 541.060, 542.058 (Vernon 2009).  Sheppard
sought damages and attorney=s fees.

Travelers filed a traditional motion for
summary judgment under Texas Rule of Civil Procedure 166a(c) on November 2,
2007 asserting that it was entitled to judgment as a matter of law because (1)
Sheppard failed to file suit within two years and one day from the date on
which his causes of action accrued; and (2) Sheppard=s claim for mold
damage is excluded under the policy.  Sheppard filed a summary judgment
response on November 19, 2007.  The trial court signed an order granting
Travelers=s motion for summary judgment on December 21, 2007
without stating which ground it relied upon.








Sheppard filed a motion for new trial on
January 22, 2008.  Travelers responded on February 14, 2008.  The trial court
signed an order denying Sheppard=s motion for new
trial on March 4, 2008.  Sheppard timely appeals the trial court=s order signed on
December 21, 2007 granting summary judgment in favor of Travelers.

Standard of Review

We review the trial court=s grant of summary
judgment de novo.  Joe v. Two Thirty Nine Joint Venture, 145
S.W.3d 150, 156 (Tex. 2004).  A traditional summary judgment may be granted if
the motion and summary judgment evidence establish there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c).  Summary judgment for a defendant is proper when the
defendant negates at least one element of each of the plaintiff=s theories of
recovery, or pleads and conclusively establishes each element of an affirmative
defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997).

Analysis

By establishing a reasonable time within
which suit must be filed, limitations periods protect against stale claims and
diminish the prospect that a case=s resolution will
be impaired by loss of evidence, death or disappearance of witnesses, fading
memories, or disappearance of documents.  Murray v. San Jacinto Agency, Inc.,
800 S.W.2d 826, 828 (Tex. 1990).  Contract actions typically are governed by a
four-year statute of limitations.  Tex. Civ. Prac. & Rem. Code Ann. _ 16.004 (Vernon
2002).  However, an insurer may limit through contractual provisions the time
for filing suit; such provisions are valid and enforceable.  Bazile v. Aetna
Cas. & Sur. Co., 784 S.W.2d 73, 74 (Tex. App.CHouston [14th
Dist.] 1989, writ dism=d).  Contractual limitation provisions in
an insurance policy may not create a limitations period shorter than two
years.  Tex. Civ. Prac. & Rem. Code Ann. _ 16.070 (Vernon
2008). 

The Travelers policy at issue here sets
the limitations period at two years and one day.  See also Tex. Ins.
Code Ann. ' 541.162 (Vernon 2009) (establishing two-year
limitations period for claims under Chapter 541 of the Insurance Code).  








A.      When Did Sheppard=s Causes of Action
Accrue?

Determining when a cause of action accrues
typically is a question of law.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 221 (Tex. 2003).[1] 
AAs a general rule,
a cause of action accrues and the statute of limitations begins to run when
facts come into existence that authorize a party to seek a judicial remedy.@  Id.
(citing Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962
S.W.2d 507, 514 (Tex. 1998), and Murray, 800 S.W.2d at 828).  AIn most cases, a
cause of action accrues when a wrongful act causes a legal injury, regardless
of when the plaintiff learns of that injury or if all resulting damages have
yet to occur.@  Knott, 128 S.W.3d at 221 (citing S.V. v.
R.V., 933 S.W.2d 1, 4 (Tex. 1996)).

Accrual may be deferred if the cause of
action (1) is not discovered as a result of fraud or fraudulent concealment; or
(2) is Ainherently
undiscoverable.@  Kuzniar v. State Farm Lloyds, 52
S.W.3d 759, 760 (Tex. App.CSan Antonio 2001, pet. denied) (en banc). 
Sheppard did not plead these bases for deferring accrual of his cause of
actions; did not assert them in his summary judgment response; and does not
assert them on appeal.  Therefore, Travelers was not required to negate these
bases for deferring accrual in the trial court and they do not affect the
analysis on appeal.  See, e.g, Via Net v. TIG Ins. Co., 211 S.W.3d 310,
313 (Tex. 2006).








The question remains: When did Sheppard=s causes of action
accrue?  Travelers contends that Sheppard=s causes of action
accrued in July 2001 when (1) an independent adjuster hired by Travelers orally
told him there was no coverage for his contents claim, and (2) Travelers closed
its file after sending Sheppard a check for $4,890.60 on his structural claim. 
Sheppard contends that his causes of action accrued on March 8, 2005, when
Travelers sent a denial letter after re-opening his file in May 2003 to
investigate his claims in response to correspondence from Sheppard=s attorney.  Based
on the November 2006 filing date of Sheppard=s suit, his causes
of action are viable if they accrued in March 2005 and barred by limitations if
they accrued in July 2001.

It is undisputed that Travelers did not
send written notification to Sheppard in July 2001 explaining its determination
regarding his claim and the reasons for its decision.  See Tex. Ins.
Code Ann. ' 542.056 (Vernon 2009).  This circumstance does not
determine the accrual date of Sheppard=s claims.  The
absence of a written notice in July 2001 containing the reasons for rejecting
his claim may or may not be a statutory violation.  Accrual under the legal
injury rule is a separate issue.  See Kuzniar, 52 S.W.3d at 760 (A[T]he failure to
comply with a statutory duty has nothing to do with, and fails to vitiate, the
Kuzniars= own
responsibility to exercise diligence in pursuing their claim.@).

The Texas Supreme Court Ahas suggested that
when >there is no
outright denial of [an insurance] . . . claim, the exact date of accrual of a
cause of action . . . should be a question of fact to be determined on a
case-by-case basis.=@ Knott, 128
S.W.3d at 222 (quoting Murray, 800 S.W.2d at 828 n.2).  Application of
this suggestion[2]
depends heavily on the particular context of a particular claim.

This point is illustrated by Kuzniar,
an intermediate appellate decision discussed in Knott.  See Knott,
128 S.W.3d at 222 (quoting Kuzniar, 52 S.W.3d at 760).  Nowhere in Knott
does the supreme court reject or question the analysis in Kuzniar.








Kuzniar holds that the
date upon which an insurer closes its claim file may be relied upon in
appropriate circumstances as Aan objectively verifiable event that
unambiguously demonstrate[s the insurer=s] intent not to
pay the claim@ and starts the limitations clock.  Kuzniar, 52
S.W.3d at 760.  The file closing date establishes accrual A>even if the fact
of injury [was] not discovered until later.=@  Id. (quoting
S.V., 933 S.W.2d at 4).

The San Antonio Court of Appeals applied
this precept in Kuzniar, in which the insureds filed a claim with State
Farm in August 1992 arising from a plumbing leak in their home.  Id.  State
Farm opened a claim file and sent an adjuster to investigate; in turn, the
adjuster asked the insureds to hire a plumber to investigate the leak.  Id. 
State Farm closed its claims file in January 1993 after receiving no further
communication from the insureds.  Id.  The insureds sued in August 1996
alleging that State Farm wrongfully failed to pay their claim.  Id.  The
trial court granted summary judgment in favor of State Farm on limitations, and
the court of appeals affirmed.  Id.

In so doing, the court of appeals
concluded that A[t]he legal injury in this case occurred
when State Farm unreasonably failed to pay the Kuzniars= claim, which at
the very latest was when the claim file was closed on January 13, 1993.@  Id.  The
court also concluded that footnote 2 of Murray did not foreclose summary
judgment on limitations because it Arefers to a
scenario where the insurance company >strings an insured
along without denying or paying a claim.=@ Kuzniar,
52 S.W.3d at 761 (quoting Murray, 800 S.W.2d at 828 n.2).  AIf the Kuzniars
had alleged State Farm acted fraudulently in connection with its denial of the
claim, then perhaps a fact issue would exist concerning when the cause of
action accrued.@  Id.  AHowever, as we
have noted, the Kuzniars made no such claim.@  Id.  AAnd there is
nothing in this record, even after indulging all inferences and doubts in favor
of the Kuzniars, to suggest State Farm was wrongfully stringing along the
Kuzniars.@  Id.  AIndeed, the
parties did not even communicate with each other after 1992.@  Id.

Kuzniar=s analysis applies
with equal force here.  The date on which Travelers closed its claims file
establishes Aan objectively verifiable event that unambiguously
demonstrated [the insurer=s] intent not to pay the claim . . . .@  Id. at
760.[3]








As in Kuzniar, there is no
contention or record support here for an assertion that Travelers was Astringing
[Sheppard] along@ after 2001.  Independent adjuster York
orally informed Sheppard on July 4, 2001 that any damage to the contents of the
house would not be covered.  Sheppard stated under oath that York told him the
contents were Acompletely off the table.@  Sheppard further
testified that York told him on July 4, 2001 that contents Awere not covered.@

After inspecting the house, York told
Sheppard that his estimated recovery on his claim would total $4,890.60 after
reductions for depreciation and Sheppard=s deductible. 
York also instructed Sheppard to contact Travelers if he had any new
information that might affect his claim.  Travelers then sent Sheppard a check
for $4,890.60 on July 22, 2001.  Travelers had no further contact with Sheppard
for at least 20 months thereafter.  Cf. Ehrig v. Germania Farm Mut. Ins.
Assoc., 84 S.W.3d 320, 323-24 (Tex. App.CCorpus Christi
2002, pet. denied) (fact issue existed regarding accrual based on adjuster=s May 1996 oral
notification of claim denial due to insurer=s conduct
immediately after oral denial, which included sending an engineering report on
foundation to the insured; discussing engineering report with the insured; and
sending forms to insured identifying conflicting dates of claim denial in July
1996 and May 1997).








Sheppard contends Travelers committed
wrongful acts that caused legal injury to him by failing to Afully pay covered
claims@ and Afully and promptly
investigate, settle and pay the covered claims.@  Sheppard
testified that Travelers=s July 2001 payment of $4,890.60 for
structural damage Aseemed unduly low,@ and that it Abecame obvious
that that wasn=t going to be enough@ to repair the
damage to 306 West Cowan.  Sheppard testified that he knew in 2001 that repairs
to the house would cost more than $20,000, and that York had taken any contents
claim Acompletely off the
table.@  Under these
circumstances, the asserted wrongful acts that caused Sheppard=s asserted legal
injury occurred in 2001 and his causes of action accrued at that time.  See
Knott, 128 S.W.3d at 221.

B.      Did Travelers= Later
Correspondence Affect the Accrual Date?

Having determined that Sheppard=s causes of action
accrued in 2001, we next address whether Travelers=s subsequent
conduct affected accrual.

Sheppard contends that A[w]here an
insurer[] . . . reinvestigates a claim, the limitations period commences at the
time of the latest denial, and not the initial denial of benefits.@  According to
Sheppard, this means that Athe limitations period commences on the
date Travelers denied the second claim B March 8, 2005.@

Sheppard=s argument
parallels one this court already has rejected.  See Pace v. Travelers Lloyds
of Tex. Ins. Co., 162 S.W.3d 632, 634-35 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  The plaintiff in Pace received a letter from the
insurer dated April 26, 2000 denying his claims.  Id. at 633.  This
letter also stated that the plaintiff should contact the insurer with any new
information that might affect the coverage decision.  Id. at 634.

Following receipt of this letter, the
plaintiff provided the insurer with an engineer=s report regarding
his claim.  Id.  The insurer then sent the plaintiff a letter dated
September 24, 2001 indicating that it had re-opened his claim file and
conducted further investigation based on the report provided by the plaintiff. 
Id.  The insurer stated in this letter that its findings remained
unchanged and its denial of the plaintiff=s claim stood.  Id. 
The plaintiff filed suit on January 8, 2003, and the trial court granted
summary judgment on limitations.  Id. at 633.








The plaintiff in Pace contended
that a fact issue existed as to accrual based on the invitation to contact the
insurer with new information, and the insurer=s decision to
revisit his claim.  Id. at 634-35.  In addressing the plaintiff=s primary
argument, we highlighted the following language from the insurer=s 2000 letter: AAfter careful
consideration of all information available to us, we have determined that the
damage to your property is not afforded coverage under the insurance policy.@  The letter also
stated, A[W]e will be
unable to make payment . . . .@  Id. at 634.  This language
communicated an unequivocal decision to deny coverage.  Id.  We also
noted that an insurer need not use the word Adeny@ or other Amagic words@ to express its
denial of a claim if that denial is otherwise obvious.  Id. at 634 n.1
(citing Knott, 128 S.W.3d at 222-23).

In addition, this court noted that an
invitation to provide additional information does not negate a prior denial.  Id.
at 634.  Nor is a prior denial negated by the possibility that the insurer may
revisit the claim or change its decision.  Id.  We refused to adopt such
a position because doing so would put insurers to an untenable choice between
(1) refusing requests for reconsideration outright and risking suit for bad
faith insurance practices; or (2) considering requests and restarting the
limitations period.  Id. at 634-35.

The plaintiff in Pace also
contended that revisiting his original claim created a Anew@ claim that was
not denied until the insurer notified him of the results of its renewed
investigation.  Id. at 635.  The plaintiff asserted that his cause of
action based on denial of this Anew@ claim did not
accrue until September 24, 2001.  Id.  The plaintiff relied for support
upon Pena v. State Farm Lloyds, 980 S.W.2d 949 (Tex. App.CCorpus Christi
1998, no pet.).  See id.








Sheppard cites Pena for its
statement that Aclaims for additional payments may begin
the statute of limitations running anew.@  Pena, 980
S.W.3d at 954.  In Pace, this court distinguished Pena based on
(1) the ongoing and continuous nature of the peril giving rise to the plaintiff=s claims in Pena;
and (2) a subsequent partial payment following the original denial.  Pace,
162 S.W.3d at 635 (citing Pena, 980 S.W.3d at 635).  Pace also
focused on this key distinction: A[T]o whatever
extent the [original] . . . decision was reconsidered by Travelers based on the
additional information, there is no evidence that the [original] decision was
ever expressly or impliedly withdrawn or changed, such as by making payment or
otherwise taking action inconsistent with that decision.@  Id.  AWithout evidence
of either a claim for additional damages or a withdrawing or changing of the
[original] . . . decision, as in Pena, Pace has provided us no basis to
conclude that the rationale of that case has any application here.@  Id.

Like the insured in Pace, Sheppard
misplaces his reliance on Pena.  Travelers communicated its resolution
of Sheppard=s claims and closed its file in July 2001.  See
Kuzniar, 52 S.W.3d at 760.  Sheppard proffered no evidence that
Travelers later (1) withdrew or changed its initial denial; or (2) made further
payments beyond the initial $4,890.60 check issued in July 2001, the asserted
inadequacy of which underpins Sheppard=s contractual and
statutory causes of action.  Therefore, Travelers=s subsequent
actions in response to Sheppard=s inquiry some 20 months after denial did
not affect Sheppard=s already-accrued causes of action.  Those
causes of action accrued in 2001 and were barred by limitations when Sheppard
filed suit in 2006.

We overrule Sheppard=s issue regarding
the propriety of the trial court=s grant of
Travelers=s summary judgment motion.[4]


Conclusion

We affirm the trial court=s summary
judgment.

 

/s/      William J. Boyce

Justice

 

Panel consists of Justices Anderson
and Boyce. (Former Justice Guzman not participating.)      









[1]  For this reason, we reject Sheppard=s contention that the policy=s reference to when Athe cause of action accrues@ is
ambiguous.





[2]  At least two courts of appeals have concluded that
the quoted language from footnote 2 of Murray is dicta.  See Kuzniar,
52 S.W.3d at 761 (A[T]he court candidly admits the legal point it was
making in the footnote was dictum and had nothing to do with the case . . . . 
The footnote cannot, therefore, be relied on as if it were the holding of the
court.@); see also Ehrig v. Germania Farm Mut. Ins. Assoc.,
84 S.W.3d 320, 325 (Tex. App.CCorpus Christi
2002, pet. denied) (Athe statement in Murray is dicta@).  As discussed in the text, footnote 2 does not
foreclose summary judgment in this case even assuming that this portion of Murray
carries weight.





[3]  Sheppard contends on appeal that the record does not
establish July 22, 2001 as the date on which Travelers closed its claims file. 
According to Sheppard, (1) this date appears only in the business record
affidavit signed by Diana Romano-Johnson as records custodian and used by
Travelers to establish the admissibility of Travelers=s claims file; (2) this date does not appear in the
business records themselves; and (3) Texas Rule of Evidence 903(10) does not
contemplate that a business records affidavit will prove more than compliance
with the standards governing admission of hearsay evidence.  We reject this
contention because Sheppard=s first premise
is incorrect.  Travelers=s claims file includes a document stating:  AFile Status: Closed 07/22/01.@  Sheppard does not challenge the admissibility of
this portion of the claims file; does  not contend that the claims file itself
is inadmissible; and does not contend that the recitations in Romano-Johnson=s affidavit fail to satisfy the business records
exception to the hearsay rule.  Therefore, we conclude that undisputed evidence
establishes July 22, 2001 as the date on which Travelers closed its file on
Sheppard=s claim.





[4]           Because
we conclude that summary judgment was granted properly based on the expiration
of the Policy=s limitations period, we need not address Travelers=s assertion that summary judgment was proper because
Sheppard sought recovery for damages the policy did not cover.